## WHITNEY and another vs. MORROW.

*September 3 — September 21, 1880.*

*Burden of Proof.*

It having been determined in this action of ejectment, that if there was no military occupation of the premises in controversy when the act of congress of April 17, 1828, was passed, the title of Gardapier (under whom defendant claims) became perfect, by force of that act, to said premises, and that the fact of such military occupation was to be shown by parol proof (95 U. S., 551): *Held*, that the plaintiffs, who affirm the fact of such military occupation, had the burden of proving it; and, upon their failure to make such proof, there was no error in directing the jury to find for the defendant.

APPEAL from the Circuit Court for *Brown* County.

Ejectment, for land in the borough of Fort Howard in said county, described as follows:    Bounded on the north by private claim No. 1, confirmed to Jacques Porlier, on the east by Fox river, on the south by vacant strip confirmed to Alexis Gardapier, and on the west by lot No. 111 of Fort Howard reservation, containing 94.76 acres.    The answer, after a general denial, claims title by adverse possession for more than forty years under claim of title exclusive of any other right, founded upon a written instrument as a conveyance of the premises.

On a former trial plaintiffs had a judgment in the circuit court, which was affirmed in this court (36 Wis., 438).    On writ of error the supreme court of the United States reversed the judgment and directed a new trial.    95 U. S., 551.[1]

---

[1] The supreme court of the United States held, among other things, 1. That if the land claimed by Gardapier was not occupied by the United States for military purposes at the time of the passage of the act of congress of April 17, 1828, Gardapier's title to the tract claimed by him became perfect by force of that confirmatory act.  2. That the documentary evidence found in the record before that court and relied upon by plaintiffs as showing that the land was occupied for military purposes at the time of the passage of said act, was insufficient for that purpose; and that the court erred in rejecting testimony offered by defendant to show that there was no such occupation.  3. That

On the second trial plaintiffs put in evidence a patent from the United States to Pierre Grignon, dated June 2, 1870, and covering the lands in dispute; together with oral and record evidence that the title of Pierre Grignon had vested in them before the commencement of this action.    Defendant admitted his possession of .the land in dispute.

Defendant then made proof that whatever title Alexis Gardapier formerly had in the north two-thirds of the north half of the vacant strip of land confirmed to said Gardapier by the commissioners to settle land claims at Green Bay under the act of congress of February 23, 1823, had vested in him.    He next offered in evidence, 1. An entry by said Gardapier, found on p. 722, vol. 4 of American State Papers, of "a vacant strip lying between lot No. 1 confirmed to Jacques Porlier on the north, and tract No. 2 confirmed to Pierre Grignon on the south, commencing at low water mark and running west 80 arpents, and in width 3 arpents on the [Fox] river," with the decision of the commissioners that the tract described in the entry be confirmed to said Gardapier (p. 723).    2. An entry by Pierre Grignon, dated February 24, 1823, found on page 721 of the same volume, with the decision of the commissioners that the tract so entered be confirmed to said Grignon, provided it should not interfere with the claim of said Gardapier.

Defendant having rested, plaintiffs offered the following evidence:    1. Oral testimony that from 1827 to 1846 the land known as the "vacant strip" and the "Gardapier claim" did not include the premises in question, but lay to the south of it. 2. A patent dated June 2, 1870, from the United States to said Gardapier, covering the vacant strip 3 arpents in width

said claim of Gardapier "embraced the entire tract lying between tract number one, confirmed to Jacques Porlier, on the north, and tract number two, confirmed to Louis Grignon, on the south, commencing on the river and running back eighty arpents "— whatever might be its actual frontage upon the river.— REP.

between lots 1 and 2, confirmed to him by the commissioners and by act of congress of 1866. The evidence was rejected. By direction of the court, the jury rendered a verdict for the defendant; and from a judgment upon said verdict the plaintiffs appealed.

The cause was submitted for the appellants on the brief of *M. L. Martin* and *Vroman & Sale.*

For the respondent there was a brief by *Tracy & Bailey,* and oral argument by *Mr. Tracy.*

COLE, J. As we understand the decision of the supreme court of the United States (see 95 U. S. R., 551), there is really no open question presented on this record. That court distinctly decided that, if there was no military occupation of the premises in controversy when the confirmatory act of April 17, 1828, was passed, the title of Gardapier became perfect, by force of the confirmation, to the entire tract lying between tract No. 1, confirmed to Jacques Porlier, on the north, and tract No. 2, confirmed to Louis Grignon, on the south, commencing on the river, and running back eighty arpents. The vital question which the court left open for further litigation was, whether or not the land clamed by Gardapier was actually occupied for military purposes at and before the passage of the confirmatory act. The military occupation, the court held, was a fact to be established or shown by parol proof in the case.

It is true, the court was not called upon to decide, nor did it decide, upon whom lay the burden of proving the fact that the land was actually occupied for military purposes, so as to defeat the effect of the confirmatory act; but we suppose upon principle the *onus* was upon the plaintiffs, who affirmed the fact; for the general rule is, "that the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue" (1 Greenl. Ev., § 74); and we see no reason for exempting the plaintiffs from the operation of this

rule. According to the decision just referred to, the grant took effect and passed the title, unless the lands were occupied for military purposes so as to come within the reservation or proviso. Now, on the trial in the court below, no evidence was offered on either side to show that the land was occupied by the United States for military purposes previously to or at the time of the passage of the confirmatory act; and, in the absence of all proof upon the subject, we cannot presume that it was so occupied. As an essential part of their case, the plaintiffs were bound to prove the fact of such occupancy in order to defeat the force of the confirmatory act, as construed by the supreme court; and this they did not attempt to do. Under the circumstances, therefore, there was no error in the circuit court directing the jury to find for the defendant.

*By the Court.*— Judgment affirmed.